IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

|  |  |  |
|---|---|---|
| GE CAPITAL FRANCHISE FINANCE<br>CORPORATION, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:05-1287-T-An |
| VS. | ) | |
| | ) | |
| GD DEAL HOLDINGS, L.L.C.; | ) | |
| BAKER ENERGY, INC.; CITY OF | ) | |
| CLARKSVILLE, TENNESSEE; CITY | ) | |
| OF COOKEVILLE, TENNESSEE; | ) | |
| CITY OF GALLATIN, TENNESSEE; | ) | |
| CITY OF LEBANON, TENNESSEE; | ) | |
| COUNTY OF MONTGOMERY, | ) | |
| TENNESSEE; COUNTY OF SUMNER, | ) | |
| TENNESSEE; COUNTY OF WILSON, | ) | |
| TENNESSEE; DUALITE SALES & | ) | |
| SERVICE, INC.; GALLATIN FOOD | ) | |
| MART, INC.; HEER & HEER, INC.; | ) | |
| SHRI PRAYOSHA, INC.; SERVGAS, | ) | |
| L.L.C.; KARTESH, INC.; Z.A. | ) | |
| INTERNATIONAL GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

---

## ORDER DENYING DEFENDANT GD DEAL HOLDINGS, L.L.C.'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, OR, IN THE ALTERNATIVE, MOTION FOR ABSTENTION

---

Defendant GD Deal Holdings, L.L.C. ("GD Deal"), the maker of thirty-eight

promissory notes that are now held by Plaintiff GE Capital Franchise Finance Corporation

("GECFFC"), moves to dismiss GECFFC's effort to foreclose on the collateral securing GD

Deal's debt on the ground that the court lacks subject matter jurisdiction, or, alternatively, that the court may abstain from exercising any jurisdiction it does have. GECFFC responds that subject matter jurisdiction is proper in this court because GECFFC's foreclosure suit is related to the pending Chapter 11 bankruptcy proceedings of a different defendant, Baker Energy, Inc. ("Baker Energy"). *See* 28 U.S.C. § 1334(b).[1]  In addition, GECFFC contends that abstention, while within the court's discretion, *see id.* § 1334(c)(1), is only appropriate in a narrow class of cases that does not include this one.

For the reasons set forth below, the court concludes that it does have subject matter jurisdiction over GECFFC's foreclosure suit because the outcome of the suit could have a conceivable effect on the Baker Energy bankruptcy estate or on the administration of the Baker Energy bankruptcy estate. *See Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In Re Dow Corning Corp.)*, 86 F.3d 482, 491 (6th Cir. 1996).   The foreclosure proceeding is, therefore, "related to [a case] under title 11" within the meaning of 28 U.S.C. § 1334(b).  The court declines to exercise its statutory discretion to abstain.  Accordingly, GD Deal's Motion to Dismiss for Lack of Subject Matter Jurisdiction, or, in the Alternative, Motion for Abstention is DENIED.

I.

A.

GD Deal is a Delaware limited liability company with its principal place of business

---

[1]GECFFC does not argue any other basis for federal court jurisdiction over this proceeding, and the court is aware of none.

in Bowling Green, Kentucky.  On April 19, 2001, GD Deal entered into a loan agreement with FFCA Acquisition Corporation ("FFCA") whereby FFCA agreed to make thirty-eight separate loans to GD Deal.  The aggregate principal amount of the original thirty-eight loans was approximately $ 25,000,000.00.  Each one of the thirty-eight individual loans was evidenced by a promissory note made by GD Deal.  Furthermore, each one of the thirty-eight individual loans was secured by a "mortgage" encumbering a particular parcel of real estate owned by GD Deal.[2]  Each one of those thirty-eight mortgages also encumbered, in addition to the land itself: any buildings and/or improvements; all rents arising from a lease of the land, buildings, and/or improvements; all of the personal property owned by GD Deal and located at the particular site in question; and, all of the rents arising from the lease of such personal property.  *See* Compl. ¶¶ 21–23.

On the same day that GD Deal obtained the loans from FFCA, GD Deal leased each of the thirty-eight sites, along with all of the equipment and other personal property located on each site, to Clark Retail Enterprises, Inc. ("Clark").  Approximately eighteen months later, in October of 2002, Clark filed for Chapter 11 bankruptcy relief in an Illinois bankruptcy court. As part of its reorganization efforts, and with the approval of the Illinois bankruptcy court, Clark assigned its leasehold interest in all of the GD Deal real and personal property to Baker Energy.  *See id.*, Ex.'s 5–6. Baker Energy assumed all of Clark's obligations to GD Deal.  *Id.*, Ex. 6.

---

[2]Each of the "mortgages" actually consisted of a "Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing."  *See, e.g.* Compl., Ex. 9 ("2157 Mortgage").

3

On February 15, 2005, Baker Energy filed for Chapter 11 relief in the United States Bankruptcy Court for the Western District of Tennessee. At that time, either Baker Energy or one of its several subtenants was in physical possession of the GD Deal real and personal property, and Baker Energy's leasehold interest was an asset of its bankruptcy estate. By operation of law, however, Baker Energy was ultimately deemed to have rejected its unexpired leasehold interest because it did not exercise its right to assume or reject the lease within the statutorily prescribed time period. *See* 11 U.S.C. § 365(d)(4).

In the meantime, GECFFC[3] became the holder of the notes made by GD Deal, and GECFC determined that GD Deal was in default. However, the automatic stay that arose by virtue of Baker Energy's pending bankruptcy precluded GECFFC from taking immediate action to foreclose on the liens securing GD Deal's obligations. GECFFC soon moved for relief from the automatic stay, and, on July 27, 2005, the Honorable G. Harvey Boswell of the West Tennessee bankruptcy court approved a stipulated order granting GECFFC relief from the automatic stay so that GECFFC could exercise its rights under applicable law with respect to the GD Deal collateral. Compl., Ex. 7.

## B.

After Judge Boswell granted relief from the automatic stay in Baker Energy's bankruptcy, GECFFC commenced the instant state law foreclosure proceeding in this court.

---

[3]GECFFC, like GD Deal, is a business entity organized under the laws of Delaware. GECFFC's principal place of business is in Scottsdale, Arizona. Compl. ¶ 1.

GECFFC sought to obtain a judgment enforcing seven particular notes,[4] to have the corresponding mortgage liens declared prior and superior to all other claims, and to have the encumbered real and personal property sold with the proceeds of sale applied to administrative costs, to local taxes, and then to any remaining indebtedness owed to GECFFC. GECFFC named these defendants: GD Deal; Baker Energy; seven different business entities that had entered into sublease agreements with Baker Energy; and seven different Tennessee municipal corporations that had potential claims for unpaid taxes, assessments, and/or charges levied against the encumbered real and personal property in Tennessee.[5] The complaint explained Baker Energy's role in GECFFC's foreclosure suit as follows: "Defendant Baker Energy may have or claim an interest in, right or title to the [collateral by virtue of its position as the lessee of the collateral]." *See, e.g.*, Compl. ¶ 94. GECFFC asserted that this court had jurisdiction to entertain the suit and to grant the requested relief pursuant to 28 U.S.C. § 1334(b) because GECFFC's effort to foreclose on the GD Deal collateral was "related to" Baker Energy's pending bankruptcy case. *Id.* ¶ 19.

---

[4]The remaining thirty-one promissory notes were the subject of a federal court proceeding in Kentucky that was essentially identical to this action. GECFFC had to commence two separate federal court proceedings in two different states because the GD Deal collateral is spread over both Kentucky and Tennessee. Only seven of the thirty-eight promissory notes are secured by collateral located in Tennessee, so this action only involves GECFFC's effort to enforce those seven notes and the corresponding security agreements. The Kentucky federal district court recently dismissed GECFFC's suit on the basis that it lacked subject matter jurisdiction. *See infra* Part I.D.

[5]GECFFC also asked the court to appoint a receiver pendente lite, which the court did. *See* dkt. # 42.

C.

On November 9, 2005, GD Deal filed this Motion to Dismiss for Lack of Subject Matter Jurisdiction, or, in the alternative, Motion for Abstention.  In the motion, GD Deal primarily contends that GECFFC's state law foreclosure proceeding against the GD Deal collateral is not "related to" Baker Energy's bankruptcy case because the Baker Energy estate no longer has a leasehold interest in the GD Deal collateral.  *See* GD Deal's Mem. Supp. Mot. to Dismiss for Lack of Subject Matter Jurisdiction, or, in the Alternative, Motion for Abstention ("GD Deal's Mem. Supp. Mot.") at 4 ("The most important fact in this case is that Baker's bankruptcy estate now has no legal interest in the property at issue.").  As a secondary argument, GD Deal points out that, even if the court decides that this action is related to Baker's bankruptcy proceedings, the court has statutory discretion to abstain from exercising that jurisdiction pursuant to 28 U.S.C. § 1334(c)(1).  *See* 28 U.S.C. § 1334(c)(1) (stating that district courts may abstain from "related" cases out of concerns for "the interest of justice, . . . comity with state courts, . . .or respect for state law).  GD Deal believes that the relation of this case to Baker Energy's bankruptcy is "tenuous" and that allowing GECFFC's state law foreclosure to proceed in federal district court against property located throughout the State of Tennessee would disrespect Tennessee's "local action" venue provision that requires foreclosures to be brought in the county where the land lies.  *See* GD Deal's Mem. Supp. Mot. at 12, 13 (citing TENN. CODE § 16-11-114(1)).  For these reasons, GD Deal believes permissive abstention would be a wise exercise of this court's discretion.

6

No defendant other than GECFFC has responded to GD Deal's motion. In GECFFC's response, it does not repeat its previous assertion that Baker Energy may have or claim to have an interest in the GD Deal collateral, and it does not take issue with GD Deal's claim that Baker Energy has already "rejected" the interest it once had. *Compare, e.g.*, Compl., ¶ 38 *with* GECFFC's Mem. Opp. GD Deal's Mot. at 2 ("The Lease was rejected in the Baker Energy bankruptcy case."). Instead, GECFFC concedes that the leasehold is no longer an asset of the Baker Energy bankruptcy estate but strongly disagrees with GD Deal over the significance of that fact with respect to the court's subject matter jurisdiction. GECFFC says that the court has jurisdiction, notwithstanding Baker Energy's rejection of its leasehold interest, because the bankruptcy estate may be potentially liable for Baker Energy's breach of both the lease as well as of the subleases and because the outcome of this foreclosure suit could either increase or decrease the amount of the bankrupt estate's potential liability. GECFFC additionally asserts that the court should not abstain because there is no pending state court proceeding, because this proceeding involves no novel or complex issue of state law, because abstention would require GECFFC to commence multiple foreclosure proceedings across the state and would delay the completion of Baker Energy's bankruptcy, and because GECFFC believes GD Deal is attempting to "frustrate and delay" GECFFC's right to foreclose.

Before turning to the merits, the court finds it appropriate first to discuss a recent

development in a related federal proceeding involving both GECFFC and GD Deal. The repayment of the thirty-one promissory notes not involved in this action is secured by GD Deal collateral located in the State of Kentucky. Therefore, GECFFC commenced, in addition to this suit, a separate proceeding to enforce the remaining notes and to foreclose on the Kentucky collateral in the United States District Court for the Western District of Kentucky, Bowling Green Division. GD Deal filed a motion in that court seeking dismissal on grounds identical to those asserted in this case. On December 5, 2005, while this motion was pending, that court issued a memorandum opinion granting GD Deal's motion on the ground that the federal district court lacked subject matter jurisdiction.[6] *See GE Capital Franchise Finance Corporation v. GD Deal Holdings, L.L.C.*, No. 1:05CV145-R, 2005 U.S. Dist. LEXIS 31185, at \*7–8 (W.D. Ky. Dec. 5, 2005) (memorandum opinion).[7]

The memorandum opinion issued in the Kentucky proceedings focused on the question of whether Baker Energy still had a legal interest in the Kentucky collateral. *Id.* at \*11. The court noted that GD Deal had sent Baker Energy a notice of default and of termination for failure to cure default, followed soon thereafter by an actual notice of termination of the lease between GD Deal and Baker Energy. *Id.* GD Deal sent both of these notices, moreover, prior to the filing of Baker Energy's bankruptcy petition. *Id.* at \*13. The court also found it significant that Judge Boswell had granted GECFFC relief from the

---

[6]In light of the conclusion on the subject matter jurisdiction issue, the opinion did not discuss GD Deal's alternative argument.

[7]Apparently, neither GECFFC nor GD Deal thought it was appropriate to inform this court of the recent developments in Kentucky.

8

automatic stay in Baker Energy's bankruptcy to pursue its "rights and remedies under state law." *Id.* at *11–12. Last, the court stressed Judge Boswell's conclusion that, by operation of law, Baker Energy was deemed to have rejected its leasehold interest in the GD Deal collateral. *Id.* at *13.

The court then concluded that the notice of default, the notice of termination, the order granting relief from automatic stay, and the order deeming Baker Energy's leasehold interest rejected, collectively, established that Baker Energy no longer had a legal interest in the property at issue. *Id.* In light of that conclusion, the court held that GECFFC's Kentucky foreclosure suit would not have an effect on the outcome of Baker Energy's bankruptcy case. *Id.* at *14. Therefore, according to the court, the foreclosure was not "related to [a case] under title 11" within the meaning of 28 U.S.C. § 1334(b). *Id.* at *14. Because the court then dismissed for lack of subject matter jurisdiction, the court did not address GD Deal's alternative arguments. *Id.* at *6.

As explained more fully below, this court comes to a different conclusion on the question of subject matter jurisdiction, declines to abstain, and denies GD Deal's motion.

## II.

### A.

The relevant text of 28 U.S.C. § 1334(b)'s grant of federal court jurisdiction reads as follows: "the district courts shall have original jurisdiction . . . of all civil proceedings . . . related to cases under title 11." 28 U.S.C. § 1334(b). The parties agree that there is no

other source from which this court could derive the authority to entertain GECFFC's foreclosure action. The sole question that must be decided with respect to GD Deal's subject matter jurisdiction objection, then, is whether GECFFC's foreclosure suit is "related to" Baker Energy's bankruptcy case within the meaning of § 1334.

Although Congress did not define the district courts' "related to" jurisdiction with precision, Congress did use statutory language that "suggests a grant of some breadth." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307–08 (6th Cir. 1995); *see also In Re Salem Mortg. Co.*, 783 F.2d 626, 633–34 (6th Cir. 1986). The choice of words was intentional and was designed to equip courts with the authority necessary to ensure the efficient and expeditious administration of bankruptcy estates and "all matters connected with . . . bankruptcy estate[s]." *Celotex Corp.*, 514 U.S. at 308 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)) (internal quotation marks omitted). A district court should be cognizant of this deliberate legislative policy when confronted with the question of whether a particular civil proceeding is "related to" a pending bankruptcy.

To be "related to [a case] under title 11," then, it is unnecessary for the specific civil action to involve "the property of the debtor or the estate." *Id.* (citing *Pacor, Inc.*, 743 F.2d at 994)); *see also Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In Re Dow Corning Corp.)*, 86 F.3d 482, 489 (6th Cir. 1996) ("A proceeding need not . . . be against the debtor or against the debtor's property to satisfy the requirements for related to jurisdiction.") (quoting *Pacor, Inc.*, 743 F.2d at 994) (internal quotation marks omitted).

10

Instead, "if the outcome of [the] proceeding could *conceivably* have *any* effect on the estate being administered in bankruptcy," the proceeding will be considered within the district court's "related to" jurisdiction under 28 U.S.C. § 1334(b). *In Re Dow Corning Corp.*, 86 F.3d at 489 (quoting *Pacor Inc.*, 743 F.2d at 994) (emphases added) (internal quotation marks omitted); *Robinson v. Mich. Consol. Gas Co.*, 918 F.2d 579, 583 (6th Cir. 1990). Moreover, a civil proceeding not directly involving the debtor or the bankruptcy estate that "*could* alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)[,]" or one that "in any way impacts upon the handling and administration of the bankruptcy estate," suffices to establish the requisite nexus with the title 11 proceeding. *In Re Dow Corning Corp.*, 86 F.3d at 489 (emphasis added) (internal quotation marks and citations omitted).

As these guideposts make clear, before a district court may exercise its jurisdiction pursuant to § 1334(b), it does not have to be established with certainty that the particular proceeding will have an ultimate effect on the bankruptcy estate. *See, e.g., In Re Salem Mortg.*, 783 F.2d 626, 635 (6th Cir. 1986) (finding that "[§ 1334(b)] does not require a finding of definite liability of the estate as a condition precedent to holding an action related to a bankruptcy proceeding") (citation omitted). For "[a] key word in this test is 'conceivable.' Certainty, or even likelihood, is not a requirement." *In Re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3rd Cir. 1991) (citation omitted), *quoted in In Re Dow Corning Corp.*, 86 F.3d at 491.

11

B.

GD Deal says, as did the district court for the Western District of Kentucky, that GECFFC's foreclosure suit cannot be "related to" Baker Energy's bankruptcy because Baker Energy no longer has a leasehold interest in the encumbered GD Deal property. *See* GD Deal's Mem. Supp. Mot. at 6, 8–9; *GE Capital Franchise Finance Corporation v. GD Deal Holdings, L.L.C.*, No. 1:05CV145-R, 2005 U.S. Dist. LEXIS 31185, at *13–14 (W.D. Ky. Dec. 5, 2005). But, assuming that to be true, a finding that Baker Energy's estate has no legal interest in the collateral simply does not answer the pertinent question of whether this court has subject matter jurisdiction over GECFFC's foreclosure suit under the cases interpreting 28 U.S.C. § 1334(b)'s grant of "related to" jurisdiction. *See, e.g., Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) ("§ 1334(b) must be read to give district courts . . . jurisdiction over more than simply proceedings involving the property of the debtor or the estate.") (quoting *Pacor, Inc., supra*). To resolve the question, the court does not focus on whether this civil action *is* presently affecting property that Baker Energy has an interest in, or on whether this civil action *will* affect Baker Energy's bankruptcy, but the court instead asks whether the outcome of this proceeding "*could conceivably* have *any* affect" on the bankruptcy estate or its administration. The court finds such an effect conceivable.

When Baker Energy rejected its leasehold interest, Baker Energy effectively committed a breach of both the lease and the existing subleases. *See* 11 U.S.C. § 365(g)(1);

12

*In Re Miller*, 282 F.3d 874, 877 (6th Cir. 2002); *In Re Kmart Corp.*, 290 B.R. 601, 607 (Bankr. N.D. Ill. 2002). The breaches are deemed to have occurred before Baker Energy's bankruptcy. *See* 11 U.S.C. § 365(g)(1). The parties injured by the breaches are treated as unsecured creditors with prepetition claims against the bankruptcy estate. *See* 11 U.S.C. § 502(g)(1).

The outcome of this suit could conceivably affect the size of any of these claims that may be brought against the bankruptcy estate by virtue of Baker Energy's lease rejection. To be more specific, GECFFC's security interest attached to GD Deal's right to payment under GD Deal's lease with Clark, which was eventually assigned to and assumed by Baker Energy. *See* Compl. ¶ 23; *see also id.*, Ex. 4 (Agreement of Subordination, Nondisturbance, and Attornment at 1, ¶ D). A default by GD Deal on its debt to GECFFC thus gave GECFFC the right to recover the rent owed to GD Deal by Baker Energy. Baker Energy is in bankruptcy and the lease has been rejected, however, so GECFFC's security interest in the payment of rent as collateral is now the potential right of the "lessor" to bring a prepetition claim for lease rejection damages against the Baker Energy bankruptcy estate. Whether that claim is large, small, or nonexistent will be determined by the outcome of GECFFC's efforts in this foreclosure suit. For instance, if GECFFC is able to sell the encumbered real estate for an amount equivalent to or greater than GD Deal's outstanding debt, its claim against the remaining collateral (*i.e.*, the lease rejection damages claim) will no longer exist. In the alternative, GECFFC might allow Baker Energy's existing subtenants

to assume Baker Energy's lease obligations, paying rent directly to GECFFC, which would at least reduce the amount of damages GECFFC could otherwise claim to have suffered by virtue of Baker Energy's breach. Finally, it is at least conceivable that neither of these contingencies will materialize, and it is equally conceivable that GECFFC will then attempt to "liquidate" the full allowable amount of its lease rejection damages claim against the Baker Energy bankruptcy estate.

Likewise, the size of any prepetition claims that Baker Energy's subtenants may have against the estate could be affected by the results of this action. If the suit results in the subtenants' displacement, the size of their damages claims against the Baker Energy bankruptcy estate will be larger than if they are allowed to remain in possession at an equivalent rate of rent. In other words, the proceeding in this court "could alter the debtor's . . . liabilities . . . (either positively or negatively)" vis-a-vis the subtenants. *In Re Dow Corning Corp.*, 86 F.3d at 489 (parenthetical in original).

The court thinks the presence of these possibilities suffices to make GECFFC's civil action "related to" Baker Energy's pending Chapter 11 bankruptcy under the governing standard. True, Baker Energy no longer has a property interest in the subject matter of this suit. By disavowing that interest, though, Baker Energy also disavowed its obligations under both its lease and its subleases. The parties who were injured by Baker Energy's rejection of the lease and subleases may have resulting claims against the Baker Energy bankruptcy estate. The nature and the size of those claims, if any, that are eventually

asserted against the bankruptcy estate cannot be known until after the proceedings here are concluded. Accordingly, this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b).[8]  In reaching that conclusion, the court acknowledges and respects the contrary views expressed in *GE Capital Franchise Finance Corporation v. GD Deal Holdings, L.L.C.*, No. 1:05CV145-R, 2005 U.S. Dist. LEXIS 31185, at *7–8 (W.D. Ky. Dec. 5, 2005) (memorandum opinion).

### III.

GD Deal alternatively argues that the court should exercise its discretion to abstain from entertaining this action even if it does have subject matter jurisdiction.  GD Deal's Mem. Supp. Mot. at 9.  Congress specifically mentioned the district courts' discretion to abstain from this particular type of proceeding in 28 U.S.C. § 1334(c)(1).[9] This mentioning of abstention, however, did not create a new "type" of abstention but merely made clear that the breadth of § 1334(b)'s jurisdictional grant does not preclude a district court from abstaining under well-settled principles in an appropriate case even if the case is "related to" a pending bankruptcy.

Under those well-settled principles, it is fundamental that "abstention from the

---

[8]The court believes that exercising subject matter jurisdiction over this civil action fully comports with Congress' intent to grant jurisdiction that would enable courts sitting in bankruptcy "to deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *See Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995).

[9]28 U.S.C. § 1334(c)(1) specifically provides that "nothing in [§ 1334] prevents a district court in the interest of justice, or in the interest of comity with state courts or respect for state law, from abstaining from hearing a particular proceeding . . . related to a case under title 11."

exercise of federal jurisdiction is the exception, not the rule." *Ankenbrandt v. Richards*, 504

U.S. 689, 705 (1992) (quoting *Colorado River Water Conservation Dist. v. United States*,

424 U.S. 800, 813 (1976)) (internal quotation marks omitted).  That is, when Congress has

properly conferred federal court jurisdiction over particular cases or controversies, those

courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them."

*Id.* (internal quotation marks and citation omitted).  Only in "truly extraordinary" cases

should a federal court abstain.  *C.f. West Coast Video Enters., Inc. v. Owens* (*In Re West

Coast Video Enters, Inc.*), 145 B.R. 484, 488 (Bankr. E.D. Pa. 1992).

Courts have considered the following factors in deciding whether to abstain from

civil actions over which they have jurisdiction pursuant to 28 U.S.C. § 1334(b):

> (1) the effect or lack thereof on the efficient administration of the estate if [the court
> abstains], (2) the extent to which state law issues predominate over bankruptcy
> issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of
> a related proceeding commenced in state court or other nonbankruptcy court, (5) the
> jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness
> or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather
> than form of an asserted core proceeding, (8) the feasibility of severing state law
> claims from core bankruptcy matters to allow judgments to be entered in state court
> with enforcement left to the bankruptcy court, (9) the burden of the federal court's
> docket, (10) the likelihood that the commencement of the proceeding in [federal]
> court involves forum shopping . . ., (11) the existence of a right to a jury trial, and
> (12) the presence in the proceeding of nondebtor parties.

*Federated Dep't Stores, Inc. v. White Flint Ltd. P'ship.* (*In Re Federated Dep't Stores, Inc.*),

240 B.R. 711, 721 (Bankr. S.D. Ohio 1999) (internal quotation marks omitted) (citations

omitted).  The weight given to any one of these factors varies in each particular case, and

no single factor is decisive.  *See In Re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 6

16

F.3d 1184, 1189 (7th Cir.1993). However, "because § 1334(c)(1) is concerned with comity and respect for state law," significant consideration should be given to those factors. *See id.* (citations omitted).

The court does not believe that this is one of those "truly extraordinary" cases in which it should abstain from exercising the subject matter jurisdiction that Congress has conferred. The court expressly notes the absence of any pending state court proceeding the integrity of which could be tainted by this court's proceedings. There are also no novel or complex issues of state law involved in this action. GECFFC merely seeks to exercise its state law rights as the holder of GD Deal's promissory notes and mortgages.

Moreover, abstention would result in the commencement of multiple state court proceedings across Tennessee. The completion of Baker Energy's reorganization could be delayed by multiple proceedings. First, Baker Energy would be required to appear and to defend each action whereas if this court exercises jurisdiction only one defense will be necessary. Second, there is a reasonably greater likelihood that multiple proceedings will entail more of a collective delay than would one proceeding in this court. Because, as explained in Part II.B., the outcome of these proceedings could affect the outcome of Baker Energy's bankruptcy, delaying whatever ultimate effect they do have only serves to frustrate Congress' intent that federal courts "efficiently and expeditiously" resolve "all matters connected with the bankruptcy estate." (citation omitted).

For similar reasons, the court is not persuaded by GD Deal's argument that

Tennessee's "local action rule" warrants permissive abstention. Strict compliance with that rule in this case would require GECFFC to bring four separate foreclosure proceedings in four different state courts. *See* TENN. CODE § 16-11-114(1) ("All bills . . . to foreclose a mortgage or deed of trust . . . shall be filed in the county in which the land, or a material part of it, lies . . . ."). Although abstaining might be construed as showing respect for Tennessee's legitimate interest in centralizing land records, *see Patrick v. Hardin*, 385 S.W.2d 905, 907 (Tenn. 1964) (explaining the purpose of the local action rule), it also could be construed as showing indifference toward the equally important national interest in having one federal forum resolve all issues "related to" Baker Energy's bankruptcy as speedily and as efficiently as possible. In addition, even though abstention by its nature should be invoked only rarely, the type of abstention GD Deal here advocates knows no limit. It could not be confined to real property foreclosures, *see, e.g.*, TENN. CODE § 16-11-114 (localizing all actions to "divest or clear . . . title to land," to obtain specific performance of a contract "relating to realty," or "to foreclose a mortgage or a deed of trust by a sale of personal property"), but it would apply instead to all cases in which state law vests exclusive jurisdiction over a particular type of action in one state court. Such cases are hardly extraordinary.

For all of these reasons, GD Deal's alternative motion for abstention is denied.

## IV.

For the foregoing reasons, GD Deal's Motion to Dismiss for Lack of Subject Matter

Jurisdiction, or, in the Alternative, Motion for Abstention, is DENIED.

IT IS SO ORDERED.


_James D. Todd_____
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

_28 December 2005_____
DATE


19

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 48 in
case 1:05-CV-01287 was distributed by fax, mail, or direct printing on
December 30, 2005 to the parties listed.

---

Michael R. Jennings
326 N. Cumberland St.
Lebanon, TN 37087

Harlan E. Judd
WYATT TARRANT & COMBS LLP
918 State St.
Bowling Green, KY 42101

Scott A. Bachert
HARNED, BACHERT & DENTON, LLP
324 East Tenth Street
Bowling Green, KY 42102--127

Jeffrey G. Jones
WIMBERLY LAWSON SEALE WRIGHT & DAVES, PLLC
1420 Neal St., Ste. 201
P.O. Box 655
Cookeville, TN 38503--065

Leah May Dennen
355 N. Belvedere Drive
Gallatin, TN 37066

Joe H. Thompson
132 W. Main St.
Gallatin, TN 37066

T. Michael O'Mara
O'MARA & JOHNSON, PLLC
317 W. Spring St.
Cookeville, TN 38501

W. Timothy Harvey
HARVEY & SILVUS
310 Franklin Street
Clarksville, TN 37043

Mark C. Travis
WIMBERLY LAWSON SEALE WRIGHT & DAVES, PLLC
P.O. Box 655
1420 Neal St., Ste. 201
Cookeville, TN 38503--065

Roger A. Maness
233-A Dunbar Cave Rd.
P.O. Box 1149
Clarksville, TN 37041--114

Jeffrey Wegner
KUTAK ROCK LLP
1650 Farnam St.
Omaha, NE 68102

P. Andrew Wright
City Attorney for City of Lebanon
200 Castle Heights Ave., N.
Lebanon, TN 37087

Laura A. Williams
RAINEY KIZER REVIERE & BELL
105 S. Highland Ave.
P.O. Box 1147
Jackson, TN 38302--114

David Haines
One Public Square
Clarksville, TN 37040

Robert L. Crawford
WYATT TARRANT & COMBS
P.O. Box 775000
Memphis, TN 38177--500

John Jolley
KUTAK ROCK LLP
1650 Farnam St.
Omaha, NE 68102

Honorable James Todd
US DISTRICT COURT